UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LISA PRICE,

        Plaintiff,                   Case No.  03-60218

v.                                District Judge Marianne O. Battani
                                   Magistrate Judge R. Steven Whalen

FEDERAL EXPRESS CORPORATION,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

Before the Court is Defendant's Motion for Summary Judgment [Docket #16], filed November 29, 2006 which has been referred for a Report and Recommendation, pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion be GRANTED, and the Complaint DISMISSED WITH PREJUDICE.

### I.  BACKGROUND

Plaintiff, a former station manager at Federal Express Corporation, alleges that the company engaged in racial and gender discrimination against her in violation of Title VII of the Civil Rights Act of 1964, resulting in her discharge on October 17, 2002. Plaintiff, a black female, contends she experienced adverse action in the form of an unwanted transfer, after which she was temporarily denied a "geographical difference" pay increase. *Complaint*,

¶¶14-15. She alleges further that during the month prior to her discharge, her supervisors required her to travel to a meeting in Memphis, Tennessee by one of the company's freight planes while male managers attending the same meeting were permitted to take commercial passenger flights. *Id.* at ¶16. Plaintiff states that over the next few weeks, she was suspended for failing to submit timely reports while similarly situated male managers filing tardy reports were not disciplined. *Id*. at ¶17. She attributes her October 17, 2002 termination to racial and gender discrimination, requesting damages for lost wages and emotional distress. *Id.* at ¶¶19-20.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.  ANALYSIS

Plaintiff has offered no evidence that anyone in a decision-making position expressly stated a desire to remove, demote or stymie the career prospects of her or any other employee based on race, gender, or age. Thus, Plaintiff's claims of age and gender discrimination are based on circumstantial evidence. In such a case, the burden-shifting approach first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 37 L.Ed.2d 668 (1973), applies. *See Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003). Under that

framework, the Plaintiff must present a prima facie case of unlawful discrimination. Once she has done so, the burden shifts to the Defendant to "articulate some legitimate, nondiscriminatory reason" for taking the challenged action. *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).[1] If the Defendant satisfies that burden, the Plaintiff must then prove, by a preponderance of the evidence, that the proffered reason for the Defendant's actions is not the true reason, but rather a pretext for discrimination.

## A. A Prima Facie Case

### i. Defendant's Argument

Defendant contends that most fundamentally, Plaintiff has failed to make a prima facie case of discrimination, arguing that she has not established that other similarly-situated employees were treated differently than she. *Docket #16* at 10. Defendant submits that Plaintiff, previously a station manager at its Port Huron, Michigan facility received the first of three written disciplines on December 24, 2001. *Docket #16* at 2; Exhibit B. Plaintiff did not contest the action, although Defendant company provides an appeal process for disciplinary actions. *Id.*; Exhibit A at 55. After her transfer in February, 2002, Defendant disputes that Plaintiff was entitled to the higher geographic pay for the period between February 15, 2002 and March 15, 2002, submitting that the company's policy mandates that the geographic pay differential is applied "once a permanent and official change is affected," pointing out that once Plaintiff was "permanently stationed" at the Macomb County facility,

---

[1] This is a burden of production. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001).

-4-

she received the pay increase. *Id*. at 4; fn 2.

Defendant contends further that Plaintiff was disciplined again on March 27, 2002 for service failures which occurred after she had left work early without securing backup personnel. *Id.*, Exhibit E. Defendant states that in addition to disciplinary actions, Plaintiff failed to meet performance goals in June and August of 2002. *Id*., Exhibits F, G. Also in August, 2002, Plaintiff terminated an employee, Shelita Porter for being "belligerent to management." *Id.* at 6; Exhibit A, 58. Plaintiff's termination of Porter was reversed by managing director Cathy Walton, a black female, who admonished Plaintiff for "becom[ing] personal" and "losing control of the situation." *Id.* at 6; Exhibit H. Defendant disputes Plaintiff's contention that she was the only attendee of the September, 2002 Memphis meeting asked to fly "freight," pointing out that all attendees were informed that the company preferred that they use the company's shipping planes and further, that Plaintiff has conceded that two other managers also traveled by freight plane to the same meeting. *Id.* at 7; Exhibit A, 41-43.

Finally, Defendant states that contrary to Plaintiff's allegation, she was not terminated for filing untimely reports, stating instead that she received her third disciplinary action in 12 months on October 17, 2002 for failing to secure the reinstatement of Shelita Porter which prevented Ms. Porter from receiving a paycheck for an entire month. *Id.* at 8; Exhibit J.[2]

### ii. Elements of a Prima Facie Case

---

[2]According to Federal Express's stated policy, three written disciplinary actions in one year results in termination. *Docket # 16* at 8; Exhibit J.

In order to establish a prima facie showing of racial, gender, or age discrimination in such a case, the Plaintiff must introduce sufficient evidence that (1) she was a member of the protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination. *McDonnell Douglas, supra,* 411 U.S. at 802. The last factor may take various forms, depending upon the facts and allegations of a particular case. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254, n.6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Hazle v. Ford Motor Company*, 464 Mich. 456, 463, n.6, 628 N.W.2d 515 (2001) ("the elements of the *McDonnell Douglas* prima facie case should be tailored to fit the factual situation at hand"); *Shah v. General Electric Company*, 816 F.2d 264, 268-271 (6th Cir. 1987) ("However articulated, the significance of the prima facie case is that it permits an 'inference of discrimination...because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'") (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)).

**iii. Plaintiff's *Pro Se* Complaint, Liberally Construed, Presents Elements of Prima Facie Case.**

Plaintiff is a member of the protected classes, i.e., she a black female over the age of 40. She was first given a "lateral" transfer to a less convenient facility, then terminated from employment after 17 years with Defendant company. The evidence is sufficient to show that

at least before the events leading up to her termination, she was qualified for the position she held at Federal Express. She has therefore satisfied the first, second, and third elements of a prima facie case.

As to the fourth element - whether the adverse action was taken under circumstances giving rise to an inference of unlawful discrimination - Plaintiff's *pro se* complaint, liberally construed, allows for at least an inference of unlawful discrimination.[3]

Plaintiff's allegations of discrimination can be organized chronologically into three groups. (1) On December 24, 2001, while still working at the Port Huron facility, Plaintiff received a disciplinary notice from Senior Manager John Pizzola, a white male, for her failure to follow up on previously identified problems within her facility. *Docket #16*, Exhibit B. Pizzola's notice referenced Plaintiff's "new Senior Manager," Donald Sanders, a black male. *Id.*, Exhibit E. The next month, Sanders reassigned Plaintiff to a facility in Macomb County, Michigan, where despite maintaining the same job title and pay, she was assigned to the afternoon/evening shift. *Id.* at 3. Although she began working at the Macomb facility on February 15, 2002, Plaintiff did not receive the "geographic pay differential" regularly allotted to the company's Macomb County employees until March 15, 2002. *Complaint*, ¶¶14-15. Plaintiff states that her former position at the Port Huron facility was filled by a white male, Steve Tucker. *Docket # 18*, Exhibit L.

---

[3] *See Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004), citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000) (*pro se* pleadings are held to "an especially liberal standard"); Fed.R.Civ.P. 8(f) ("All pleadings shall be so construed as to do substantial justice").

(2) Second, Plaintiff states that in September, 2002, the company requested that she travel to a Memphis, Tennessee meeting by one of the company's freight planes while male managers attending the same meeting were permitted to fly commercial passenger airliners. *Complaint,* ¶16.  Plaintiff alleges that she and two other female managers were the only employees required to take a freight plane.  She also submits that although she was suspended later that month for failing to submit timely reports, similarly situated male managers filing tardy reports were not disciplined. *Id.* at ¶17.

(3) Finally, she disputes Defendant's grounds for her October 17, 2002 termination (failure to obtain back pay for a reinstated employee) alleging that other managers were not disciplined for the same failures. *Id.* at ¶18.

In combination, these facts give rise to a sufficient inference of discrimination to satisfy the elements of a prima facie case.

### B.  Employer's Stated Justification for the Action

A permissive reading of Plaintiff's complaint allows for a finding that she has stated a prima facie case of racial, gender, and/or age discrimination.  However, Defendant has more than met its burden of articulating and substantiating legitimate, non-discriminatory reasons for Plaintiff's transfer, her September, 2002 travel arrangements to Memphis, Tennessee, and her October, 2002 termination.

#### i.  Transfer

"In general, a lateral transfer, or the refusal to make a lateral transfer, is not a

-8-

materially adverse action..״ *Freeman v. Potter,* 2006 WL 2860604, *4 (6th Cir. 2006); *Mitchell v. Vanderbilt University,* 389 F.3d 177, 183 (6th Cir. 2004). *But see Stewart v. Ashcroft,* 352 F.3d 422, 426 (D.C.Cir.2003)("[T]here *are* lateral transfers that could be considered adverse employment actions," finding that among other actions, "withdrawing an employee's supervisory duties . . . constitutes an adverse employment action" (emphasis in original).

Assuming for the sake of argument that Plaintiff's lateral transfer to the Macomb facility where she was placed on the evening shift qualifies as "adverse action," Plaintiff's own testimony, coupled with Defendant's non-discriminatory reasons for the move defeat this claim. Although Plaintiff states that her former position was filled by a white male, her deposition testimony acknowledges that she was aware of downsizing throughout the company even before receiving the December 24, 2001 disciplinary letter. *Docket #16*, Exhibit A at 23. Further, as pointed out by Defendant, although the letter was generated by John Pizzola, Plaintiff does not allege that Pizzola discriminated against her by either issuing the letter or approving her transfer, but instead attributes the action to the discriminatory motives of Pizzola's successor, Donald Sanders. *Id*., Exhibit A at 25. However, Plaintiff fails to present any evidence, circumstantial or otherwise, to show that Sanders actions - whatever role he played in her transfer - were motivated by racial, gender, or age considerations.

Likewise, Plaintiff's claim that between February 15, 2002 and March 15, 2002 the

company discriminated by failing to allot her the geographical pay differential has been rebutted by Defendant's statement that per company policy, employees were not given the differentials until "permanently stationed" at their new facility. *Id.* at 4, fn 2. Plaintiff does not dispute the fact that she was not deemed "permanently stationed" until March 15, 2002.[4]

### ii. September, 2002 Memphis, Tennessee Meeting

Plaintiff's allegation that the company required her to take a freight plane to attend a corporate meeting in Memphis while male managers flying in from Michigan were permitted to fly commercial stands at odds with information provided by Defendant. Plaintiff alleges Sanders insisted that she take a company plane to the meeting over her protestations that she would "be up all night" if forced to fly "freight," alleging further that she was the only employee who did not take a passenger flight. *Docket #16*, Exhibit A at 41. However, Plaintiff acknowledged that she, along with the other attendees, received an e-mail from human resources stating that the company preferred that participants take the company's freight planes to the meeting. *Id.* Further, although Plaintiff contends that pressure from

---

[4]Defendant's exhibits show that Plaintiff's relationship with her new senior manager deteriorated almost immediately after her transfer was processed. Plaintiff alleges that Sanders unfairly held her responsible for performance failures by her staff on the evening of March 25, 2002. A March 27, 2002 disciplinary letter sent by Sanders characterizes the incident as a "debacle. . . . represent[ing] gross leadership failure of an astounding magnitude." *Docket #16*, Exhibit E. Although Plaintiff makes generalized allegations of discrimination by Sanders, a black male, she fails to present any evidence that his actions were motivated by racial, gender, or age animus. *See Danelishen v. Frank* 1991 WL 203749, *4 (6th Cir. 1991); *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir.1982)("[P]ersonality conflicts alone will not supply a basis for a discrimination claim").

Sanders required her to make the less convenient flight, this alone does not show that Sanders or the company acted with improper motives.[5]

### iii. October 17, 2002 Termination

Defendant has likewise supplied non-retaliatory reasons for the events leading up to Plaintiff's termination on October 17, 2002. On September 23, 2002, Sanders issued a non-disciplinary letter for her failure to submit documentation due by the 20th of each month. Defendant submits evidence that Plaintiff was fired on October 17, 2002 after she failed to secure pay for an employee who had been reinstated for a month. *Docket #16*, Exhibit J. Pursuant to company policy, Plaintiff was dismissed for accruing three disciplinary actions within one year. *Id*., Exhibit J**.**

### C. Pretext

Since Defendant has satisfied its burden of production by providing non-discriminatory reasons for its personnel actions, Plaintiff must prove by a preponderance of the evidence that the proffered reasons for the Defendant's actions are not the true reasons, but rather pretexts for discrimination. Plaintiff has failed to present anything other than bare allegations that Defendant's non-retaliatory reasons were pretexual.

Even though Plaintiff's former position at the Port Huron facility was filled by a

---

[5]Even if Plaintiff had been successful in sustaining this claim, it would be on the basis of gender or age rather than race. Defendant has stated, and Plaintiff has not denied, that two other white female managers took freight planes to the same meeting.

white male, she has failed to counter Defendant's contention (and her own admission) that the company was undergoing widespread managerial changes at the time that her transfer was contemplated. While Plaintiff now alleges that her first two disciplinary write-ups were unjust, she has acknowledged that she did not pursue appeals of either decision. Although Plaintiff alleges harsh treatment at the hands of her supervisor, including his alleged requirement that she travel to the September, 2002 meeting by "freight," and issuing a non-disciplinary admonishment on September 23, 2002, she admits that beyond her own subjective belief, he did not give her an objective basis to believe that he practiced racial, gender, or age discrimination against her.

Similarly, Plaintiff cannot support her contention that discriminatory motives animated her termination rather than the more obvious reason that she failed to reinstate the pay of one of her employees. Although she maintains that "FedEx did not have a policy or any type of guideline on what to do once an employee is reinstated," that does not support an inference of pretext, and Plaintiff cannot otherwise demonstrate that Defendant's purported reasons for terminating her were pretexual.[6]

I note in closing that Plaintiff's response to this motion contains numerous favorable job reviews and commendations pre-dating the events in question. This material, juxtaposed

---

[6]Plaintiff claims that another manager also experienced problems reinstating a former employee. *Docket #16*, Exhibit A at 47. However, assuming for the sake of argument that the manager in question was not disciplined or terminated for the same failure, Plaintiff cannot claim disparate racial or gender treatment since she acknowledges that the manager is also a black female. *Id*., Exhibit A at 48.

against more recent poor job reviews, admonishments, and disciplinary actions dated from December 24, 2001 until October 17, 2002 suggest that either Plaintiff's work quality diminished dramatically in her last nine months of employment, or as Plaintiff contends, she was treated harshly by her long term employer after many years of service. The facts suggest that she may indeed have been treated shabbily by her new manager, Donald Sanders, perhaps because of a personality conflict. Even if true, that is insufficient to sustain a Title VII action in this Court. *See Ackerman, supra*. She has not shown that Sanders–himself a black male–or anyone else at Federal Express made employment decisions based on racial, gender or age discrimination, and therefore, the Defendant is entitled to summary judgment.

## IV.   CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #16] be GRANTED, and the Complaint DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen<br>
R. STEVEN WHALEN<br>
UNITED STATES MAGISTRATE JUDGE

Dated: February 14, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 14, 2007.

S/Gina Wilson<br>
Judicial Assistant